IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AMERICAN GUARANTEE AND
LIABILITY INSURANCE COMPANY,

    Plaintiff,

v.                                            No. 11-CV-378 ___/___

ALAN MAESTAS,
ALAN MAESTAS LAW OFFICE, P.C., and
CRISTOBAL MONTOYA,

    Defendants.

# COMPLAINT FOR DECLARATORY RELIEF

COMES NOW Plaintiff American Guarantee and Liability Insurance Company ("AGLIC"), by and through its attorneys of record, Guebert Bruckner P.C., and brings this Complaint for Declaratory Relief based upon the following allegations:

## PARTIES

1.    Plaintiff AGLIC is a corporation organized under the laws of the State of New York with its administrative offices in Illinois. AGLIC is an insurer authorized to issue and deliver liability insurance policies in the State of New Mexico.

2.    Defendant Alan Maestas is an attorney licensed to practice law and practicing law in the State of New Mexico, and is a resident of the State of New Mexico.

3.    Defendant Alan Maestas Law Office, P.C. is a professional corporation organized under the laws of the State of New Mexico, with its principal place of business in the State of New Mexico.

4.    Defendant Cristobal Montoya is an individual who is a resident of the State of New Mexico.

## JURISDICTION

5. This is a civil action of which this Court has original jurisdiction pursuant to 28 U.S.C. §1332, in that the amount in controversy appears to exceed the sum of $75,000.00, exclusive of interest and costs, and the matter is between citizens of different states.

6. This is a declaratory judgment action pursuant to 28 U.S.C. § 2201 and Rule 57 of the federal Rules of Civil Procedure.

7. Cristobal Montoya is a potential third-party beneficiary under the insurance policy issued by AGLIC to Defendants Alan Maestas and Alan Maestas Law Office, P.C. (hereinafter collectively "Maestas"); therefore, pursuant to the recent decision of the New Mexico Court of Appeals in the matter styled *Monty Gallegos v. Nevada General Insurance Company,* Opinion No. 2010-NMCA-004 (Nov. 23, 2010), Mr. Montoya is a proper party to this litigation.

## UNDERLYING LITIGATION

8. On or about June 15, 2006, Defendant Alan Maestas Law Office, P.C. (formerly known as "Maestas & Boothby, P.C."), filed a Complaint on behalf of Cristobal Montoya, alleging claims arising from his employment, including but not limited to age discrimination and hostile work environment.

9. On July 6, 2009, Mr. Montoya's claim was dismissed with prejudice after the defendants in that case moved for a dismissal on the grounds that Montoya failed to prosecute his claim for a period in excess of 180 days, pursuant to Rule 1-041 NMRA. Despite efforts to have the Court reconsider the dismissal, the Honorable John M. Paternoster denied the Motion for Reconsideration and entered an Order to that effect on October 2, 2009.

10. Defendant Montoya retained new counsel, Rudy Martin, on or about October 6, 2009 to handle a claim of professional negligence on his behalf. Mr. Martin alerted

2

Maestas to his representation on that date and requested that Maestas put his professional malpractice insurance carrier on notice of the claim.

## THE INSURANCE POLICY

11. AGLIC issued a Lawyers Professional Liability Insurance Policy, Policy No. LPL-9448932-00, to Alan Maestas Law Office, P.C., for a policy period of August 11, 2009 through August 11, 2010 ("the prior policy").  A true and correct copy of the Declarations page and policy terms for the prior policy are attached hereto as **Exhibit A** and are incorporated herein by reference as though fully set forth herein.

12. In or about August 2010, AGLIC renewed Policy No. LPL-9448932-01 for the policy period August 11, 2010 to August 11, 2011 ("the Policy").  A true and correct copy of the policy is attached hereto as **Exhibit B** and is incorporated herein by reference as though fully set forth herein.

13. AGLIC issued the policy to Maestas in reliance upon the information provided by Maestas to AGLIC in the following documents: 1) a Renewal Application for Lawyers Professional, completed and signed by Maestas on or about June 19, 2009 (attached hereto as **Exhibit C** and incorporated herein by reference as though fully set forth herein); and 2) a Renewal Application for Lawyers Professional, completed and signed by Maestas on or about June 9, 2010 (attached hereto as **Exhibit D** and incorporated herein by reference as though fully set forth herein).

14. The Policy provides, in pertinent part, as follows:

> THIS IS A CLAIMS MADE AND REPORTED POLICY. **CLAIMS** MUST BE FIRST MADE AND REPORTED TO THE **COMPANY** DURING THE **POLICY PERIOD** OR ANY EXTENDED REPORTING PERIOD.

15. The Policy also provides as follows:

   **I.     INSURING AGREEMENT**

   **A. COVERAGE**

   The **Company** will pay on behalf of an **Insured,** subject to the limit of liability, all amounts in excess of the deductible shown in the declarations that an **Insured** becomes legally obligated to pay as **Damages** and **Claim Expenses** because of a **Claim** that is both made and reported to the **Company** during the **Policy Period** or any extended reporting period based on an act or omission in the **Insured's** rendering or failing to render **Legal Services** for others. It is a condition precedent to coverage under this policy that the act or omission occurred:

   1.   during the **Policy Period**; or

   2.   prior to the **Policy Period,** provided that all of the following four conditions are met:

       a) the **Insured** did not notify any prior insurer of such act or omission or **Related Act** or **Omission**; and

       b) prior to the inception date of the first policy issued by the **Company** if continuously renewed, no **Insured** had any basis (1) to believe that any **Insured** had breached a professional duty; or (2) to foresee that any such act or omission or **Related Act or Omission** might reasonably be expected to be the basis of a **Claim** against any **Insured**; and

       c) prior to the date any **Insured** first became a member or employee of the **Named Insured,** such **Insured** had no basis (1) to believe that any **Insured** had breached a professional duty; or (2) to foresee that any such act or omission or **Related Act or Omission** might reasonably be expected to be the basis of a **Claim** against any **Insured**; and

       d) there is no policy that provides insurance to the **Insured** for such liability or **Claim**.

16. The Policy contains the following definitions:

   **A.     CLAIM** means a demand for money or **Legal Services.**
   …

E.  **DAMAGES** means the monetary portion of any judgment, award or settlement, provided such settlement is negotiated with the assistance and approval of the **Company. Damages** do not include:

1. compensation for bodily injury to, sickness, disease, death of any person, emotional distress or other emotional judgments or awards;

2. compensation for injury to or destruction of tangible property or loss of use or value thereof;

3. personal profit or advantage to which the **Insured** was not legally entitled;

4. criminal or civil fines, penalties (statutory or otherwise), fees or sanctions;

5. punitive, exemplary or multiple damages;

6. matters deemed uninsurable;

7. legal fees, costs and expenses paid to or incurred or charged by the **Insured,** no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set off or otherwise, and injuries that are a consequence of any of the foregoing, or

8. any form of equitable or non-monetary relief.
…

H.  **LEGAL SERVICES** means those services performed by an **INSURED** as a licensed lawyer in good standing, arbitrator, mediator, title agent, notary public, administrator, conservator, receiver, executor, guardian, trustee or in any other fiduciary capacity but only where the act or omission was in the rendition of services ordinarily performed as a lawyer.  **Legal Services** shall not be extended to include services rendered as a real estate agent or broker or as an insurance agent or broker.
…

J.  **NOTICE** means the **Insured's** providing the following information to the **Company,** either in writing or otherwise authorized by the **Company:**

1. the description of the alleged act or omission; and

2. the identities of the claimants or potential claimants; and

3. the identities of the responsible **Insured(s);** and

5

      4.    the date and circumstances by which the **Insured(s)** first became aware of the act or omission.

…

  **L.**    **POLICY PERIOD** means the period of time between the effective date as shown on the Declarations of this policy and the date of expiration or cancellation of the policy.

17.    The Policy also provides:

  **V.**    **CONDITIONS**

…

    **B.**    **NOTICE TO THE COMPANY**

      1.  **Notice** to the **Company** shall be made at such location as is indicated on the Declarations.

      2.  **NOTICE** OF AN ACTUAL **CLAIM**

The **Insured** as a condition precedent to this policy, shall immediately provide **Notice** to the **Company** of any **Claim** made against an **Insured.** In the event suit is brought against the **Insured**, the **Insured** shall immediately forward to the **Company** every demand, notice, summons or other process received directly or by any **Insured's** representative.

      3.  **NOTICE** OF A POTENTIAL **CLAIM**

The **Insured,** as a condition precedent to this policy, shall immediately provide **Notice** to the **Company** if any **Insured** has any basis to believe that any **Insured** has breached a professional duty or to foresee that any such act or omission might reasonably be expected to be the basis of a **Claim.** If during the **Policy Period** the **Insured** shall become aware of any act or omission that may reasonably be expected to be the basis of a **Claim** against an **Insured** and gives **Notice** to the **Company** of such act or omission and the reasons for anticipating a **Claim,** then any such **Claim** that is subsequently made against the **Insured** and reported to the **Company** shall be deemed to have been made and reported at the time such **Notice** was given.

      4.  FRAUDULENT **CLAIM**

6

> If any **Insured** shall commit fraud in proffering any **Claim** with regard to amount or otherwise, this policy shall become void *ab initio* as to such **Insured.**

18. In addition, the Policy provides as follows:

> **J. APPLICATION**
>
> By acceptance of this policy, all **Insureds** reaffirm as of the effective date of this policy that:
>
> 1. The statements in the application(s) and any attachment(s) attached hereto and made a part hereof, and all information communicated by the **Insureds** to the **Company,** either oral or written or electronically submitted, are true and accurate, are specifically incorporated herein, and are all **Insureds'** agreements, personal representations and warranties; and
>
> 2. All such communicated information shall be deemed material to the **Company's** issuance of this policy; and
>
> 3. This policy is issued in reliance upon the truth and accuracy of such representations; and
>
> 4. This policy embodies all agreements existing between the **Insureds** and the **Company,** or any of its agents, relating to this insurance; and
>
> 5. If any representation is false or misleading, this policy shall be void *ab initio.*

19. The foregoing policy provisions were also contained, in substantially identical form, in the prior policy.

20. Maestas first reported the claim against him on February 15, 2011 by faxing a copy of a letter from Cristobal Montoya and his attorney, Rudy Martin, dated February 14, 2011, to Zurich North America Professional Liability Claims Department.

21. The faxed notice of claim was then referred to Michael Deegan, Zurich Claims Counsel, for review.

7

22. The claim by Cristobal Montoya was actually asserted against Maestas on October 6, 2009, during the policy period for the prior policy.

23. This claim was not reported to AGLIC during the policy period of the prior policy, as required by the prior policy in order to give rise to this claim under the prior policy.

24. This claim was not first made against Maestas during the current policy period of the Policy, as required in order to give rise to coverage for this claim under the current Policy.

25. This claim was not timely reported to AGLIC or Zurich, its parent company, as required in order to give rise to coverage for this claim under the Policy.

26. This claim was first made against Maestas during the policy period of a prior policy issued by AGLIC, but was first reported to AGLIC during the policy period of the current Policy, and is therefore not a claim for which coverage exists under this Policy.

27. Prior to the policy period of the current Policy, Maestas had reason to believe that a claim alleging professional malpractice was being asserted against him; therefore, this is not a claim for which coverage exists under the current Policy.

28. Prior to the policy period for the current Policy, Maestas had a reasonable basis to foresee that a claim existed against him; therefore, this is not a claim for which coverage exists under the current Policy.

29. Maestas first had a reasonable basis to believe that a claim was being made against him during the policy period of the prior policy, not during the policy period of the current Policy, and therefore, this is not a claim for which coverage exists under the current Policy.

30. There is no extended reporting period applicable to the prior policy for the Montoya claim.

31.     Punitive or exemplary damages and compensatory damages for bodily injury and/or emotional distress are not damages for which coverage exists under this Policy.

## THE APPLICATION FOR THE INSURANCE POLICY

32.     The Renewal Application for the Policy completed by Maestas on or about June 9, 2010 **(Exhibit D),** provided as follows under the Application title:

> THIS APPLICATION IS FOR A CLAIMS MADE AND REPORTED POLICY

33.     The Application further provides:

> By signing this application the applicant agrees that after inquiry of all prospective insureds, no person proposed for coverage is aware of any fact or circumstance which reasonably might give rise to a future claim that would fall within the scope of the proposed coverage.

34.     In addition, the Application also provides:

> The applicant represents that the above statements are true and correct to the best of his or her knowledge and that no material or relevant facts have been suppressed or misstated and agree that the policy, if issued, will be issued on the reliance of such representations.

35.     In addition, the Application provides:

> Notice to New Mexico Applicant: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL AND CRIMINAL PENALTIES.

36.     The Renewal Application for the Policy asked the following question, to which Maestas answered "no":

> 9. Has any claim or suit arising out of the rendition of legal services been made against any Attorney in Question 2 above or employee of the Applicant within the past year?

37. Maestas' negative response to the foregoing question was a material misrepresentation made by Maestas in the Renewal Application for the Policy.

38. The Renewal Application for the Policy also asked the following question, to which Maestas answered "no":

> Is any Attorney in Question 2 above or employee of the Applicant aware of any circumstance(s), incident(s), act(s), error(s) or omission(s) that could result in a claim or suit against the Applicant or any predecessor or any former or current members of employees of the Applicant?

39. Maestas' negative response to the foregoing question was a material misrepresentation made by Maestas in the Renewal Application for the Policy.

40. This claim was not timely disclosed to AGLIC as part of the Renewal Application submitted in June 2010.

41. According to the terms of the policy contract, the failure to disclose the claim on the Renewal Application provides good grounds on which to move for rescission of the contract.

### FIRST CAUSE OF ACTION
### Declaratory Relief against Defendants Regarding Duty to Indemnify

42. AGLIC incorporates by reference each of the above paragraphs of the Complaint as thought more fully set forth herein, pursuant to F.R.C.P. 10(c).

43. An actual controversy has arisen and now exists between AGLIC and Defendants regarding AGLIC's obligations, if any, to indemnify Defendants in connection with the Underlying claim asserted by Defendant Cristobal Montoya. No adequate remedy, other than that herein prayed for, exists by which the rights of the parties hereto may be determined.

44. AGLIC requests that the Court make a judicial determination that AGLIC has no duty to indemnify any of the Defendants in connection with the Underlying claim because the

Underlying claim is not a claim first made during the period of the current Policy, as required for such insurance coverage to exist under the terms of this Policy.

45. AGLIC also requests that the Court make a judicial determination that AGLIC has no duty to indemnify any of the Defendants in connection with the Underlying claim because of the material misrepresentations and omissions made in the application for the current Policy completed by Maestas, which breaches the conditions of the Policy and make the Policy voidable.

46. AGLIC also requests the Court make a judicial determination that AGLIC is entitled to rescind the Policy because of the material misrepresentations and omissions made in the applications for this Policy completed by Maestas, upon which AGLIC reasonably relied to its detriment in issuing the Policy.

47. AGLIC also requests that the Court make a judicial determination that AGLIC has no duty to indemnify any of the Defendants for damages awarded against them pursuant to the Underlying claim for punitive damages, or for compensatory damages for bodily injury and/or emotional distress, because such damages are not within the coverage provided by this Policy.

## SECOND CAUSE OF ACTION
### Declaratory Relief against Defendants Regarding Duty to Defend

48. AGLIC incorporates by reference each of the above paragraphs of the Complaint as thought more fully set forth herein, pursuant to F.R.C.P. 10(c).

49. An actual controversy has arisen and now exists between AGLIC and Defendants regarding AGLIC's obligations, if any, to defend Defendants in connection with the Underlying claim. No adequate remedy, other than that herein prayed for, exists by which the rights of the parties hereto may be determined.

50. AGLIC requests that the Court make a judicial determination that AGLIC has no duty to defend any Defendant in connection with the Underlying claim because the claim against Maestas in the Underlying claim is not a claim first made during the period of this Policy, as required for such insurance coverage to exist under the terms of this Policy.

51. AGLIC also requests this Court make a judicial determination that AGLIC has no duty to defend any of the Defendants in connection with the Underlying claim because of material misrepresentations and omissions made in the application for this Policy completed by Maestas, which breached the conditions of the Policy and made the Policy voidable.

52. AGLIC also requests that the Court make a judicial determination that AGLIC is entitled to rescind the Policy because of the material misrepresentations and omissions made in the application for this Policy completed by Maestas, upon which AGLIC reasonably relied to its detriment in issuing the Policy.

### THIRD CAUSE OF ACTION
### Declaratory Relief against Defendants Regarding
### Duty to Pay Judgment in Favor of Defendant Montoya

53. AGLIC incorporates by reference each of the above paragraphs of the Complaint as thought more fully set forth herein, pursuant to F.R.C.P. 10(c).

54. An actual controversy has arisen and now exists between AGLIC and Defendants regarding AGLIC's obligations, if any, to pay any judgment or settlement entered against Defendant Maestas and in favor of Defendant Montoya in connection with the underlying claim. No adequate remedy, other than that herein prayed for, exists by which the rights of the parties hereto may be determined.

55. AGLIC requests taht the Court make a judicial determination that AGLIC has no duty to pay any judgment or settlement entered in favor of Defendant Montoya in the Underlying

claim, because the Underlying claim is not a claim first made during the policy period of this Policy, as required for such insurance coverage to exist under the terms of this Policy.

56. AGLIC also requests that the Court make a judicial determination that AGLIC has no duty to pay any judgment or settlement in favor of Defendant Montoya and arising from the Underlying claim because of material misrepresentations and omissions made in the Application for the Policy completed by Maestas, which misrepresentations and omissions constitute breaches of the Policy conditions and make the Policy voidable.

## FOURTH CAUSE OF ACTION
### Damages for Fraudulent and/or Negligent Misrepresentation

57. AGLIC incorporates by reference each of the above paragraphs of the Complaint as thought more fully set forth herein, pursuant to F.R.C.P. 10(c).

58. Maestas' misrepresentations and omissions of material fact, as set forth herein, were made by Maestas intentionally or recklessly, intending that they be relied upon by AGLIC in issuing the Policy.

59. As a result of its reasonable reliance to its detriment upon Maestas' material misrepresentations and omissions of material fact, as set forth herein above, AGLIC has suffered damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### Breach of Contract

60. AGLIC incorporates by reference each of the above paragraphs of the Complaint as thought more fully set forth herein, pursuant to F.R.C.P. 10(c).

61. Maestas' acts and omissions, as set forth hereinabove, constitute a breach of contract by Maestas.

62. AGLIC has suffered damages resulting from Maestas' breach of contract in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### Promissory Estoppel

63. AGLIC incorporates by reference each of the above paragraphs of the Complaint as thought more fully set forth herein, pursuant to F.R.C.P. 10(c).

64. AGLIC reasonably relied to its detriment upon Maestas' misrepresentations and omissions of material fact, as set forth herein above.

65. Maestas is stopped from seeking or obtaining insurance coverage under the Policy, as a result of his misrepresentations and omissions of material fact, as set forth herein above.

66. AGLIC has suffered damages as a result of its reasonable reliance upon Maestas' misrepresentations and omissions of material fact, as set forth herein above.

## REQUESTED RELIEF

WHEREFORE, American Guarantee and Liability Insurance Company prays for judgment in its favor and against Defendants as follows:

1. For a declaratory judgment that AGLIC has no duty to indemnify Defendants in connection with the Underlying claim.

2. For a declaratory judgment that AGLIC has no duty to defend Defendants in connection with the Underlying claim.

3. For a declaratory judgment that AGLIC has no duty to pay any judgment that may be recovered by Cristobal Montoya against Defendants Alan Maestas and/or Alan Maestas Law Office, P.C.

4. For an award of compensatory damages.

5. For its costs of this action.

6. For such reasonable attorneys' fees as may be permitted by law.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of the maximum number of jurors allowed by law.

Respectfully submitted,

GUEBERT BRUCKNER P.C.


By  */s/ Terry R. Guebert*
      Terry R. Guebert
      P.O. Box 93880
      Albuquerque, NM  87199-3880
      (505) 823-2300
      *Attorney for Plaintiff American Guarantee and Liability Insurance Company*